# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**Judy Gardner,**

    **Plaintiff,**

**-V-**                                                       **Case No. C-2-06-0612**
                                                               **JUDGE SMITH**
                                                               **Magistrate Judge Abel**

**Randall Mortgage Services, Inc.,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Randall Mortgage Services, Inc.'s Partial Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted (Doc. 6) and Defendant's Motion to Stay Litigation Pending Arbitration and to Compel Arbitration (Doc. 15). For the following reasons, the Court **GRANTS** Defendant's Motion to Stay Litigation Pending Arbitration and to Compel Arbitration. Accordingly, the Court will refrain from ruling on Defendant's Partial Motion to Dismiss as the case is now stayed.

### I. FACTS

Plaintiff Judy Gardner ("Plaintiff" or "Gardner") is an individual citizen of the State of Ohio. She lives in Crooksville, Ohio, in Morgan County. In 1973, Plaintiff and her husband purchased a home at 8607 McKinley Street in Crooksville, Ohio for $7,800. At no time has Plaintiff's home ever been worth more than approximately $50,000. In 1991, Plaintiff and her husband divorced and her husband's interest in the home was deeded to her.

Defendant Randall Mortgage Services, Inc. ("Randall Mortgage") is a corporation organized under the laws of and registered to do business in Ohio, with its principal place of business located at 655 Metro Place South, Suite 600, Dublin, Ohio 43017.

Sometime before March 10, 2002, Plaintiff Gardner received a mail solicitation from Defendant Randall Mortgage. Although Plaintiff had never before contacted Defendant Randall Mortgage or spoken with any employees or agents of Randall Mortgage, the mail solicitation included information that could only be obtained from Plaintiff's credit report. Plaintiff never gave Randall Mortgage, or any of its employees or agents, permission to access and/or use her credit report. As a result of this conduct, Plaintiff alleges that Defendant Randall Mortgage violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681, *et seq*.

Despite Defendant Randall Mortgage's alleged failure to comply with the FCRA, Plaintiff Gardner contacted Randall Mortgage regarding debt consolidation. Eric Smith, an employee of Randall Mortgage then went to Plaintiff Gardner's home with a mortgage loan application. Plaintiff informed Mr. Smith that she wanted a fixed interest rate loan at the lowest rate possible. She further stated that she could not afford a monthly payment of more than $600 per month (including taxes and insurance). Plaintiff also explained that she wanted to pay off all her credit card debt.

Mr. Smith called Plaintiff several days later and informed her that he could not arrange for refinancing of the first and second mortgages on her home under a fixed interest rate. Mr. Smith told her that he could arrange a refinancing of the mortgages with an adjustable interest rate, which would be fixed at 8.99% for two years, that her monthly payment would be no greater than $600 per month, and that the loan would be for $83,000 which would allow her to pay off all of her credit card debt.

Plaintiff agreed to those terms. However, at no time during these discussions did Mr. Smith discuss a broker fee with Plaintiff.

Randall Mortgage, through Mr. Smith, began working on the refinancing. Capital City Appraisal Company and its appraiser Thomas J. Knecht were hired to appraise Plaintiff's home. Although Plaintiff was never made aware of the appraisal value, she now knows that it was appraised at $105,000, far in excess of any reasonable opinion of the actual, objective fair market value of the home.

Soon after the appraisal, Mr. Smith contacted Plaintiff to inform her that Randall Mortgage had obtained the new second mortgage loan and that Long Beach would be the lender. He again stated all the previously discussed terms. He then told her that he would arrange for a title agency to come to her home to take care of all the paperwork. In reliance on the previously discussed terms, Plaintiff said he would take the loan and arrange for a representative from Chelsea Title Agency to contact her. Plaintiff alleges that, at all time relevant to this matter, Defendant Randall Mortgage maintained an ongoing business relationship with Chelsea Title for the companies mutual profit in connection with the brokering, placing, and closing of residential mortgage loans.

Mark Ferrar with Chelsea Title Agency called Plaintiff and arranged for her to sign the papers to close the loan. Plaintiff asserts that despite her protests, Mr. Ferrar wanted to meet with her at her place of employment, a food and beverage carry-out located two minutes from her home. Mr. Ferrar conducted the loan closing within hearing range of two other employees at the carry-out. Plaintiff alleges that Mr. Ferrar pushed papers in front of her, pointing to the lines where he needed her signature and then immediately taking the paper away after she signed it, and replacing it with another paper to be signed. Plaintiff claims that she noticed at the closing that the loan amount was

$89,000, instead of the $83,000 previously discussed, and that the monthly payment would be $695. Plaintiff also noticed that one of her credit cards had not been paid, in the amount of $7,000. She also realized that a broker fee of $6,000 was included in the loan. Plaintiff claims that those new terms were never disclosed to her prior to the closing.

Plaintiff claims that she was too embarrassed to ask Mr. Ferrar about the new loan terms because she did not want her co-workers to hear about her personal financial situation. Mr. Ferrar then gathered all the papers and left. Despite telling Plaintiff that he would mail copies of the loan papers to her, Plaintiff never received copies of any of the loan documents she signed.

Over the next couple of years, home mortgage rates dropped further and Plaintiff inquired with a variety of local lenders about the possibility of refinancing her loan. Plaintiff learned that she could not qualify for any refinancing because the second mortgage loan arranged by Randall Mortgage has been justified through an appraisal falsely valuing her home at $105,000, which far exceeds the actual value of the residence.

Plaintiff alleges that she would not have accepted the loan Defendant Randall Mortgage prepared had it disclosed that the loan was predicated upon an inflated appraisal and the practical implications that would have on Plaintiff's future financial options.

Plaintiff initiated this lawsuit on July 20, 2006, asserting claims of violation of the FCRA, breach of fiduciary duty, violation of the mortgage broker's act, fraud, civil conspiracy, and violation of the consumer sales practices act. Plaintiff alleges that she has been injured and deceived and has lost the opportunity to save future interest costs and is obligated to pay costs and charges associated with her mortgage loan that is substantially different than what Defendant Randall Mortgage promised and represented to her. Defendant then filed a partial motion to dismiss. Then,

Defendant filed a motion to stay litigation pending arbitration and to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, on the bases of the arbitration provision in the broker retention agreement that Plaintiff signed.

## II. STANDARD OF REVIEW

Under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The requirements set forth in the FAA were "designed to override judicial reluctance to enforce arbitration provisions, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Section 4 of the FAA sets forth the procedure to be followed by the district court when presented with a petition to compel arbitration. That section provides, in relevant part, that

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

Thus, the Court must first inquire as to whether the parties have agreed to arbitrate the dispute at issue. If the district court is satisfied that the agreement to arbitrate is not "in issue," it

must compel arbitration. If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question. 9 U.S.C. § 4.

In order to show that the validity of the agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997). The required showing mirrors that required to withstand summary judgment in a civil suit. *Id. See Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir.1999) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In determining whether the parties have made a valid arbitration agreement, "state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," although the FAA preempts "state laws applicable only to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S.681, 686-87 (1996) (quotation omitted). Therefore, state law governs "generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability." *Id.* at 687; *see also Great Earth Companies, Inc. v. Simons*, 2002 WL 801785, at * (6th Cir. No. 00-2033, May 1, 2002). In assessing whether an agreement to arbitrate has been made, moreover, "[c]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714. A person's alleged ignorance of the terms of a signed arbitration agreement is no defense to its enforcement. *Haskins v. Prudential Ins. Co. of Amer.*, 230 F.3d 231, 241 (6th Cir. 2000).

### III. DISCUSSION

The Defendant Randall Mortgage asserts that Plaintiff's claims are subject to arbitration, and that the litigation must be stayed pending arbitration. Defendant's Motion is premised on the provision in the Broker Retention Agreement, signed by Plaintiff, which states: "I/we agree that any disputes will be subject to arbitration or other alternative methods." Plaintiff Ms. Gardner argues that she did not agree to arbitrate any of the issues in this lawsuit. Further, she asserts that she was never provided a copy of the Broker Retention Agreement containing the arbitration clause, nor was it ever dated. The Court recognizes Plaintiff's allegations that during the closing, documents were rapidly placed in front of her, and she was instructed to sign without suggesting she read any of the documents.

However, the Court also recognizes from Plaintiff's arguments that she does not dispute that she signed the Broker Retention Agreement, nor does she allege that she was deceived into signing the Agreement. Accordingly the Court presumes that Plaintiff read the Broker Retention Agreement, including the arbitration provision, before she signed it and therefore can be bound by its provisions. *See Stout*, 228 F.3d at 715 (recognizing the rule that one who signs a contract is presumed to know its contents). Under these circumstances, like those set forth in *Simpson v. Randall Mortgage Services, Inc.*, Case No. 02-CV-656, decided by Judge Marbley on February 7, 2003, the Court must apply "the cardinal rule that, in the absence of fraud or wilful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by the provisions." *Id.* (*quoting Allied Steel & Conveyers, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960)). Based on the analysis set forth in more detail below, the Court finds that Plaintiff agreed to arbitrate her claims against Defendant Randall Mortgage.

Plaintiff sets forth two reasons why the issues in this case are not referable to arbitration and therefore why the stay should be denied. First, Plaintiff claims that there is no agreement to arbitrate because the language of the arbitration clause is not unambiguous and unequivocal. Second, Plaintiff contends that the issues raised in this lawsuit are not within the reach of the arbitration agreement. With respect to Plaintiff's ambiguity argument, she asserts that the arbitration clause's use of the phrase "alternative methods" implies a choice, and consequently Plaintiff is permitted to select the method of dispute resolution.

This Court has previously analyzed the ambiguity of this same arbitration provision in a decision by Judge Marbley, *Simpson v. Randall Mortgage Services, Inc.*, Case No. 02-CV-656. The Court was similarly faced with the challenge of determining whether to compel arbitration based on the same provision in the Randall Mortgage Broker Retention Agreement: "I/we agree that any disputes will be subject to arbitration or other alternative methods." The *Simpson* Plaintiffs challenged the ambiguity of the provision because it failed to use the term "shall." The Court held that "the arbitration provision quite clearly states that all disputes arising from the Broker Retention Agreement will be resolved by arbitration." (*Simpson* Opinon and Order at 8)[1].

Though the *Simpson* Court was faced with a different ambiguity argument than the one asserted by Plaintiff in this case, the Court finds nonetheless that the arbitration provision of the Broker Retention Agreement is unambiguous. The provision states and this Court has previously emphasized that "any disputes will be subject to arbitration...." The Court can only speculate as to

---

[1] Notably, Plaintiff asserts in her Memorandum in Opposition to Defendant's Motion to Compel that "[t]he issue of whether the arbitration provision is unambiguous and unequivocal was not raised, discussed or determined in the February 7, 2004 Opinion and Order, attached to Defendant's Motion as Exhibit B." This, however, is a blatant misrepresentation to the Court. As discussed above, Judge Marbley previously upheld this exact same provision as unambiguous.

why the remainder of the phrase states "or other alternative methods." Plaintiff claims that the provision is offering a choice, but she fails to explain what options she has to choose from and whose choice is it to make. Plaintiff obviously wants this Court to find that it is her choice and she has chosen a jury trial. The Court, however, does not agree that this provision contemplates allowing a jury trial. Alternative methods, at best, seems to mean some sort of alternative dispute resolution similar to arbitration. Moreover, even if this Court were to agree with Plaintiff that the provision is ambiguous, any ambiguity must be resolved in favor of arbitration. *See Stout*, 228 F.3d at 714.

This Court has previously found this arbitration provision to be unambiguous and unequivocal in *Simpson* and again finds it to be unambiguous in this case; therefore any disputes between the parties must be resolved through arbitration.

The Court will now address Plaintiff's second argument – that the issues raised in her Complaint are not within the reach of the arbitration agreement. Plaintiff asserts that even if this Court finds a valid arbitration provision, Plaintiff's Fair Credit Reporting Act cause of action is not within the reach of the arbitration agreement. Plaintiff relies on Defendant's assertion that the Broker Retention Agreement was executed by Plaintiff after she met with Defendant Randall Mortgage's representative. The Broker Retention Agreement provides that it was to remain in effect only until the closing of Plaintiff's loan or until the declination of the loan request. According to the plain language of the Broker Retention Agreement, that limit on the contractual period applies to all terms of the Agreement, including the arbitration provision. Plaintiff therefore asserts that if the Court finds a valid arbitration agreement, then the parties agreed only to arbitrate those claims that arose during the contract's effective time period.

Plaintiff's FCRA cause of action alleges that Defendant Randall Mortgage obtained and used Ms. Gardner's credit report without her permission prior to the execution of the Agreement. Plaintiff asserts that this cause of action falls outside the contractual period as defined by the Broker Retention Agreement and therefore the arbitration provision does not apply to this claim.

Defendant Randall Mortgage asserts that Plaintiff alleges FCRA violations both before and after the agreement time period and therefore she is essentially alleging violation on a continued regular basis. Defendant argues that these FCRA claims are inextricably tied to all of Plaintiff's other claims. Defendant then argues that since the claims are tied, so will discovery and other issues such that it would be more efficient to decide all claims together during the arbitration.

Courts will not enforce an arbitration agreement when the arbitration clause is not applicable to the dispute or issues at hand. *See Butcher v. Bally Total Fitness Corp.*, 2003 Ohio App. LEXIS 1639, *11 (8th Dist. April 3, 2003). In *Simpson*, the Court held that the claims brought on behalf of Class Two were based on the fact that Defendant Randall Mortgage engaged in conduct without Plaintiffs' permission outside the contractual period and therefore those claims were outside the scope of the arbitration agreement.

While Plaintiff is correct that her initial claim under the FCRA occurred before the agreement was signed and if that were her only claim under the FCRA, it would most likely not be eligible for arbitration. However, that is not the only FCRA claim she asserts. Plaintiff's claims differ from the *Simpson* Plaintiffs because the *Simpson* Plaintiffs only asserted FCRA claims arising prior to their execution of the agreement which contained the arbitration provision.

Plaintiff alleges in her Complaint that "Randall Mortgage has **continued** to **regularly** access Ms. Gardner's credit report without her knowledge or permission, and to **regularly** solicit Ms. Gardner with false, fraudulent and deceptive representation that are designed to "flip" consumers into new refinancings, for which Randall Mortgage could charge and collect substantial fees and additional costs, although these new transactions would not be in the consumer's best interest." (Compl. at ¶ 53).  Plaintiff has not limited her FCRA claims to the time period before entering into the agreement with Defendant Randall Mortgage, but rather asserts that such alleged acts occurred throughout the contract period and continued regularly.

The Court therefore agrees with Defendant that since some of Plaintiff's FCRA claims occur during the contract period, and the contract containing the arbitration provision broadly provides that "any dispute" concerning the parties' relationship is subject to arbitration, then the claims are so inextricably tied to Plaintiff's other claims that all of Plaintiff's claims shall be arbitrated.  The Court therefore grants Defendant Randall Mortgage's Motion to Compel Arbitration as to all of Plaintiff's claims.

## IV. CONCLUSION

Based on the above, the Court **GRANTS** Defendant's Motion to Stay Litigation Pending Arbitration and to Compel Arbitration (Doc. 15).  Accordingly, the Court will refrain from ruling on Defendant's Partial Motion to Dismiss as all of Plaintiff's claims have been referred to arbitration and the case is now stayed.

The Clerk shall remove Documents 6 and 15 from the Court's pending motions list.

**IT IS SO ORDERED.**

 */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**