# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**Judy Gardner,**

    **Plaintiff,**

**-v-**
                                             Case No.: 2:06-cv-0612
                                             JUDGE SMITH
                                             Magistrate Judge Abel

**Randall Mortgage Services, Inc.,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Randall Mortgage Services, Inc.'s Motion to Dismiss (Doc. 6) and Plaintiff's Motion for Partial Summary Judgment (Doc. 27). For the following reasons, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss and **GRANTS** Plaintiff's Motion for Partial Summary Judgment.

### I. FACTS

Plaintiff Judy Gardner ("Plaintiff" or "Gardner") is an individual citizen of the State of Ohio. She lives in Crooksville, Ohio, in Morgan County. In 1973, Plaintiff and her husband purchased a home at 8607 McKinley Street in Crooksville, Ohio for $7,800. At no time has Plaintiff's home ever been worth more than approximately $50,000. In 1991, Plaintiff, and her husband divorced and her husband's interest in the home was deeded to her.

Defendant Randall Mortgage Services, Inc. ("Randall Mortgage") is a corporation organized under the laws of Ohio and registered to do business in Ohio, with its principal place of business located at 655 Metro Place South, Suite 600, Dublin, Ohio 43017.

Sometime before March 10, 2002, Plaintiff Gardner received a mail solicitation from Defendant Randall Mortgage. Although Plaintiff had never before contacted Defendant Randall Mortgage or spoken with any employees or agents of Randall Mortgage, the mail solicitation included information that could only be obtained from Plaintiff's credit report. Plaintiff never gave Randall Mortgage, or any of its employees or agents, permission to access and/or use her credit report. As a result of this conduct, Plaintiff alleges that Defendant Randall Mortgage violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681, *et seq*.

Despite Defendant Randall Mortgage's alleged failure to comply with the FCRA, Plaintiff Gardner contacted Randall Mortgage regarding debt consolidation. Eric Smith, an employee of Randall Mortgage, then went to Plaintiff Gardner's home with a mortgage loan application. Plaintiff informed Mr. Smith that she wanted a fixed interest rate loan at the lowest rate possible. She further stated that she could not afford a monthly payment of more than $600 per month (including taxes and insurance). Plaintiff also explained that she wanted to pay off all her credit card debt.

Mr. Smith called Plaintiff several days later and informed her that he could not arrange for refinancing of the first and second mortgages on her home under a fixed interest rate. Mr. Smith told her that he could arrange a refinancing of the mortgages with an adjustable interest rate, which would be fixed at 8.99% for two years, that her monthly payment would be no greater than $600 per month, and that the loan would be for $83,000 which would allow her to pay off all of her credit card debt. Plaintiff agreed to those terms. However, at no time during these discussions did Mr. Smith discuss a broker fee with Plaintiff.

Randall Mortgage, through Mr. Smith, began working on the refinancing. Capital City Appraisal Company and its appraiser Thomas J. Knecht were hired to appraise Plaintiff's home.

Although Plaintiff was never made aware of the appraisal value, she now knows that it was appraised at $105,000, far in excess of any reasonable opinion of the actual, objective fair market value of the home.

Soon after the appraisal, Mr. Smith contacted Plaintiff to inform her that Randall Mortgage had obtained the new second mortgage loan and that Long Beach would be the lender. He again stated all the previously discussed terms. He then told her that he would arrange for a title agency to come to her home to take care of all the paperwork. In reliance on the previously discussed terms, Plaintiff said he would take the loan and arrange for a representative from Chelsea Title Agency to contact her. Plaintiff alleges that, at all times relevant to this matter, Defendant Randall Mortgage maintained an ongoing business relationship with Chelsea Title for the companies mutual profit in connection with the brokering, placing, and closing of residential mortgage loans.

Mark Ferrar with Chelsea Title Agency called Plaintiff and arranged for her to sign the papers to close the loan. Plaintiff asserts that despite her protests, Mr. Ferrar wanted to meet with her at her place of employment, a food and beverage carry-out located two minutes from her home. Mr. Ferrar conducted the loan closing within hearing range of two other employees at the carry-out. Plaintiff alleges that Mr. Ferrar pushed papers in front of her, pointed to the lines where he needed her signature and then immediately took the paper away after she signed it and replaced it with another paper to be signed. Plaintiff claims that she noticed at the closing that the loan amount was $89,000, instead of the $83,000 previously discussed, and that the monthly payment would be $695. Plaintiff also noticed that one of her credit cards had not been paid, in the amount of $7,000. She also realized that a broker fee of $6,000 was included in the loan. Plaintiff claims that those new terms were never disclosed to her prior to the closing.

Plaintiff claims that she was too embarrassed to ask Mr. Ferrar about the new loan terms because she did not want her co-workers to hear about her personal financial situation. Mr. Ferrar then gathered all the papers and left. Despite telling Plaintiff that he would mail copies of the loan papers to her, Plaintiff never received copies of any of the loan documents she signed.

Over the next couple of years, home mortgage rates dropped further, and Plaintiff inquired with a variety of local lenders about the possibility of refinancing her loan. Plaintiff learned that she could not qualify for any refinancing because the second mortgage loan arranged by Randall Mortgage has been justified through an appraisal falsely valuing her home at $105,000, which far exceeds the actual value of the residence.

Plaintiff alleges that she would not have accepted the loan Defendant Randall Mortgage prepared had it disclosed that the loan was predicated upon an inflated appraisal and the practical implications that would have on Plaintiff's future financial options.

Plaintiff initiated this lawsuit on July 20, 2006, asserting claims of violation of the FCRA, breach of fiduciary duty, violation of the mortgage broker's act, fraud, civil conspiracy, and violation of the consumer sales practices act. Plaintiff alleges that she has been injured and deceived and has lost the opportunity to save future interest costs and is obligated to pay costs and charges associated with her mortgage loan that is substantially different than what Defendant Randall Mortgage promised and represented to her. Defendant then filed a motion to dismiss. Then, Defendant filed a motion to stay litigation pending arbitration and to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, on the bases of the arbitration provision in the broker retention agreement that Plaintiff signed. The Court issued an Opinion and Order on May 14, 2007, granting Defendant's Motion to Stay Litigation Pending Arbitration and to Compel Arbitration (Doc. 21). The Court

stayed the case and deferred any ruling on the Motion to Dismiss until the arbitration was held and the parties notified the Court of any outstanding issues. The arbitration was never held. The Court has been informed that Defendant Randall Mortgage Services, Inc. is no longer in business, and in fact, are no longer represented by counsel in this action. In an effort to have the Court resolve this case, Plaintiff filed a Motion for Partial Summary Judgment on June 20, 2008. Defendant has not responded to this Motion. The Motion to Dismiss and Motion for Partial Summary Judgment are now ripe for review and will be addressed in turn.

## II. STANDARD OF REVIEW

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief [.]" A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

To survive dismissal pursuant to Rule 12(b)(6), however, a claim must "contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The United States Supreme Court, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), clarified *Twombly's* plausibility standard:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as

true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id.* at 1949-50.

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing

the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[1] The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the

---

[1] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III. DISCUSSION

#### A. Motion to Dismiss

Defendant Randall Mortgage moves to dismiss Plaintiff's First (Fair Credit Reporting Act), Second (Fiduciary Duty), Fourth (Fraud), Fifth (Civil Conspiracy) and Sixth (Consumer Sales Practices Act) causes of action. Defendant argues that Plaintiff's claims for violation of the Fair Credit Reporting Act ("FCRA"), violation of fiduciary duty, fraud, and violation of the Consumer Sales Practices Act ("CSPA") are barred by the applicable statute of limitations. Additionally, Defendant argues that Plaintiff's claims for fraud and civil conspiracy must be dismissed for failure to make requisite allegations with specificity. Finally, Defendant argues that Plaintiff's claim for violation of the CSPA must be dismissed as Defendant Randall Mortgage is not a supplier and this transaction was not a consumer transaction under the CSPA. The Court will address each argument in turn.

##### 1. *Statute of Limitations*

In response to Defendant's statute of limitations argument, Plaintiff argued that the statute of limitations for these claims was tolled by the filing of a class action lawsuit against Defendant

Randall Mortgage in *Simpson v. Randall Mortgage Services, Inc.*, Case No. C2-02-656, S.D. Ohio, Eastern Division (J. Marbley). The Supreme Court has held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). The Court later clarified that tolling applied not only to intervenors, but also to putative class members who file actions of their own. *See Crown, Cork & Seal Co. v. Parker*, 464 U.S. 345, 349 (1983). Further, the Ohio Supreme Court has adopted class action tolling, in reliance on the reasoning in *American Pipe* and *Crown*, holding that "the filing of a class action, whether in Ohio or the federal court system, tolls the statute of limitation as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *See Vaccareillo v. Smith & Nephew Richards, Inc.*, 94 Ohio St. 3d 380 (2002).

In Defendant's Reply, it withdraws its statute of limitations argument based on the aforementioned caselaw. Therefore, Plaintiff's First, Second, Fourth, Fifth and Sixth Claims remain pending.

  2. *Specificity*

Defendant argues that Plaintiff's claims for fraud and civil conspiracy must be dismissed for failure to make the requisite allegations with specificity. With respect to Plaintiff's claim for fraud, Defendant argues that Plaintiff has failed to satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires a plaintiff to particularly state the circumstances constituting the fraud. Fed. R. Civ. P. 9(b); *Divine Tower Intern Corp. v. Kegler, Brown, Hill & Ritter, L.P.A.*, 2007 WL 2572258, at *14 (S.D. Ohio 2007) (J. Graham). To comply with Rule 9(b),

the plaintiff must, at a minimum, allege the time, place, and content of the alleged misrepresentation on which he has relied; the fraudulent scheme; the defendant's fraudulent intent; and the injury resulting from the fraud. *Walburn v. Lockhead Corp.*, 431 F.3d 966, 972 (6th Cir. 2005). However, Rule 9(b) states that a complaint may *generally* state malice, intent, knowledge, and other conditions of a person's mind. Fed. R. Civ. P. 9(b). Rule 9(b)'s heightened pleading standard is not limited to claims of fraud, but also applies to "averments of fraud" or "claims that sound in fraud." *Ferron v. SubscriberBase Holdings, Inc.*, 2009 WL 650731, at *5 (S.D. Ohio) (J. Sargus).

Defendant argues that Plaintiff seeks to base her fraud claim generically on alleged bad acts that she admits she was aware of at the closing, which was completed by a non-party to this litigation. This fails to inform Defendant of the required "precise misconduct with which they were charged" and the "who, what, when and how" of its own, not the other parties', alleged fraud.

Plaintiff asserts that her fraud allegations are twofold: (1) that Defendant falsely represented the availability of specific loan terms to induce Plaintiff to enter into the loan; and (2) Defendant obtained an inflated apprisal.

The Court acknowledges that Plaintiff admits that she recognized that the closing documents that she signed contained different contractual terms that she was previously quoted, yet still signed them. However, as a mortgage broker, Defendant had a duty to "timely inform the buyer of any material change in the terms of the loan." *See* Ohio Revised Code §1322.064. Plaintiff alleges that Defendant's agent, Eric Smith, called her and provided her with the details of her refinancing. She alleges that she relied on that information when she agreed to the loan. Plaintiff further alleges that she was not made aware of any changes to the agreed terms of the loan until the closing. Therefore,

Plaintiff has sufficiently pled the "who, what, when, and how" components of the fraud claim. Defendant's Motion to Dismiss Plaintiff's fraud claim is therefore denied.

Defendant also argues that Plaintiff has failed to specifically plead a claim for civil conspiracy. Plaintiff's sole allegation is that the "acts and practices complained of herein constitute a civil conspiracy." (Compl. ¶ 68). A civil conspiracy is "an agreement between two or more persons to injure another person by unlawful action. . . . A plaintiff can establish the existence of a civil conspiracy by proving that 'there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.'" *See Leisure v. Franklin County Court of Common Pleas*, No. 2:05-cv-1123, 2006 U.S. Dist. LEXIS 29531 (S.D. Ohio May 8, 2006) (J. Holschuh). Civil conspiracy requires "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. TransAmerica Premium Ins.*, 72 Ohio St. 3d 415, 419 (1995). It is well settled that conspiracy claims must be plead with some degree of specificity, and vague or conclusory allegations which are unsupported by material facts will not be sufficient to state a claim." *Harman v. Chance*, 7 Dist. No. 99-CA-119, *3 (Nov. 14, 2000).

Plaintiff appears to be basing her conspiracy claims on non-specific allegations that Defendant conducts business with other companies, none of which have been named in this lawsuit. Plaintiff fails to make any allegation or state any underlying facts relating to the required element of malice as to any entity or person. Therefore, the Court finds that Plaintiff's Fifth Claim for civil conspiracy is insufficient as a matter of law and shall be dismissed.

### 3. *Consumer Sales Practices Act*

Defendant argues that Plaintiff's CSPA claim must fail because it was neither a supplier nor was the transaction a consumer transaction as defined under the act. Plaintiff alleges that Defendant committed unconscionable acts or practices in violation of the CSPA. The CSPA only applies to acts or practices committed by a "supplier" in the course of the "consumer transaction." *See* Ohio Revised Code § 1345.01(A) and (C). The CSPA does not apply to a pure real estate transaction. *See Brown v. Liberty Club, Inc.*, 45 Ohio St. 3d 191, 193 (1989).

Accordingly, the Court agrees with Defendant. This Court has previously rejected a similar claim. In *Hanlin v. Ohio Builders and Remodelers, Inc.*, Case No. C2-00-179 (J. Sargus), the Court concluded that the broker, BR Financial, was a dealer in intangibles in that it simply arranged for a financing transaction with the ultimate lender and as such, was not a consumer transaction. Therefore, Plaintiff's claim under the CSPA is dismissed.

## B. Motion for Summary Judgment

Plaintiff moves for summary judgment on her claims for violation of the Fair Credit Reporting Act, violation of the Ohio Mortgage Broker's Act, and for fraud. Defendant has not responded to Plaintiff's Motion. In light of Defendant's failure to respond, the Court's reliance on the facts offered by the movant is proper and sufficient. *See Guarino v. Brookfield Township Trustees*, 980 F.2d 399 (6th Cir. 1992).[2] The Court will address each of Plaintiff's claims in turn.

---

[2] Dozens of cases have dealt with the failure of a party to respond to a dispositive motion and have consistently reached the same conclusion that it is proper for the Court to rely on the movant's version of the facts. *See Littlejohn v. Larson*, 891 F.2d 29, 1989 WL 147110 (6th Cir. 1989)(summary judgment was proper where plaintiff failed to respond to defendant's motion for summary judgment and therefore no genuine issue of material fact existed).

*1.    Fair Credit Reporting Act Claim*

Plaintiff argues that she suffered damages as a direct result of Defendant's unfair and deceptive credit reporting related practices. Specifically, on November 15, 2001, Defendant impermissibly accessed Plaintiff's credit report without her authorization. Defendant then used the information to solicit her for mortgage broker services. The FCRA does not allow access to a consumer credit report for the purpose of soliciting mortgage broker services. *See* 15 U.S.C. §§ 1681b and 1681b(f).

Defendant has failed to produce any evidence demonstrating a genuine issue of material fact with respect to Plaintiff's claim, therefore, Plaintiff is entitled to summary judgment on her claim that Defendant violated the Fair Credit Reporting Act.

*2.    Ohio Mortgage Broker's Act and Fiduciary Duty claims*

Plaintiff argues that Defendant violated the Ohio Mortgage Broker's Act when it falsely and knowingly represented the availability of specific loan terms to induce Plaintiff's agreement, then failed and refused to properly and timely disclose that those terms were not actually available. Defendant Randall Mortgage Services, Inc. is a mortgage broker as defined by Ohio Revised Code § 1322.01. Plaintiff is a buyer as defined by Ohio Revised Code § 1322.01(A), because she hired Defendant to broker a personal loan. Further, Plaintiff asserts that Defendant, as a mortgage broker owed her a fiduciary duty and breached that duty by baiting her to agree to a loan on better terms than were actually provided to her.

Plaintiff has produced evidence that Defendant breached its fiduciary duty and violated the OMBA when Defendant's representative Eric Smith told Plaintiff that he could arrange the refinancing on the agreed upon terms and then presented her with different terms at the closing, which

were not disclosed prior to the closing. Defendant has failed to produce any evidence demonstrating a genuine issue of material fact with respect to Plaintiff's claims for violation of the OMBA and its fiduciary duty. Accordingly, Plaintiff is entitled to summary judgment on her OMBA and fiduciary duty claims.

### 3. Fraud Claim

Plaintiff argues that Defendant's acts involved fraud and deceit committed intentionally and/or in reckless disregard of the rights and duties owed to her. To prevail on a claim for common law fraud in Ohio, a plaintiff must show: (1) a misrepresentation; (2) of material fact; (3) made with knowledge of its falsity, or with reckless disregard for its truth or falsity; (4) upon which the plaintiff justifiably relied; and (5) a resulting injury is proximately caused by the reliance. *See Rubin v. Schottenstein, Zox & Dunn*, 119 F.Supp.2d 787, 791 (S.D. Ohio 2000) (J. Smith).

Plaintiff has submitted testimony which establishes that Defendant falsely and knowingly represented the availability of specific loan terms to induce Plaintiff to enter into the agreement. But, Defendant failed to timely disclose that those terms were not actually available despite a duty to do so. Plaintiff reasonably relied on Defendant's representations that the loan terms agreed to would be presented to her at the closing of the loan. (*See* Gardner Affidavit attached as Exhibit 1 to Plaintiff's Mot.). Defendant again has failed to produce any evidence demonstrating a genuine issue of material fact with respect to Plaintiff's fraud claim. Plaintiff is therefore entitled to summary judgment on her fraud claim.

## IV. CONCLUSION

Based on the aforementioned discussion, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's Fifth and Sixth Claims shall be dismissed. Plaintiff's Motion for Partial Summary Judgment is **GRANTED**. Judgment shall be entered in favor of Plaintiff on her claims for violation of the Fair Credit Reporting Act, violation of the Ohio Mortgage Broker's Act, violation of its fiduciary duty and fraud. Plaintiff shall be awarded damages on each of the aforementioned claims. Plaintiff shall submit her motion for damages, costs, attorneys' fees, etc. and evidence in support on or before December 15, 2009. Defendant shall submit its response on or before January 15, 2010.

The Clerk shall remove Documents 6 and 27 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　*/s/ George C. Smith*
　　　　　　　　　　　　　　　　　　　　**GEORGE C. SMITH, JUDGE**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**